**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TERESA A. WEBB,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:07-CV-859** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **NATIONWIDE MUTUAL INSURANCE** | : | |
| **COMPANY** | : | **Magistrate Judge King** |
| | : | |
| **Defendant.** | : | |
| | : | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant Nationwide Mutual Insurance

Company's ("Nationwide") Motion for Summary Judgment. Nationwide moves for summary

judgment on all claims in Plaintiff Teresa A. Webb's ("Webb") Complaint. For the reasons

stated below, Nationwide's Motion for Summary Judgment is **GRANTED.**

## II. BACKGROUND

### A. Factual Background

### 1. Webb's Employment Position

Webb began working for Nationwide in 1995. She was hired as a rate coder in

Nationwide' commercial department. In 1996, she became an audit representative, which was

essentially the same position that she held until her termination in 2005. As an audit

representative, Webb understood that she needed to report to work on time, which was at 7:30

a.m. Webb had a 45 minute lunch break and two fifteen minute breaks each day.

Webb was supervised by Jennifer Smith ("Smith") beginning on January 4, 2004. During the time Smith supervised Webb, it was her practice, subject to her discretion, to permit audit representatives who did not have a pattern of repeated tardiness to make up time missed from work (up to approximately two hours per week), without requiring the use of paid time off. This practice allowed an employee to avoid a reduction in wages or accrued leave, but it did not affect whether the time missed would be considered a work performance issue.

## 2. Nationwide's Performance Policy and FMLA Policy

Nationwide's performance policy (the "Performance Policy") stated that an associate's work performance at Nationwide "includes satisfactory completion of objections . . . such as not being tardy." (Performance Policy 12.2.) The Performance Policy cautioned:

> Performance issues are first addressed through problem identification and coaching by your manager and may progress to Performance Improvement or termination if performance does not improve. Consistent and appropriate standards for tardiness shall be set by the business unit.

(*Id.*) Employees were not eligible to apply for internal jobs, receive salary increases, or receive promotions while on Performance Improvement. (*Id.*)

Nationwide's FMLA policy provided 12 weeks of unpaid leave, using a rolling 12-month period measured backward from the date of FMLA leave usage. The FMLA policy could be found on Nationwide's intranet available to all employees. Webb acknowledged that she understood FMLA leave could only be used for a serious medical condition. She also understood that Nationwide could not discipline her if she was taking approved FMLA leave for a serious medical condition, but that it could discipline or terminate her for non-FMLA related absences or tardies.

## 3. Webb's Son's Medical Condition and Webb's Medical Condition

Webb's son was diagnosed with bipolar syndrome in May, 2004. Her son spent one week in the hospital receiving treatment during that month. As a result of his hospitalization, Webb missed work in order to be with and care for him. Following her son's discharge, Webb missed additional time in order to care for her son at home. In all, she was out of work for about three weeks in May of 2004. During this time period, Webb informed Smith that she needed to miss work in order to care for her son who was having medical issues. Webb was compensated for the entire three weeks that she was off through a combination of "Your Time," "emergency leave," and pre-scheduled vacation.

Webb contends she began to experience severe depression in May, 2004, and consulted with her family physician, Dr. Grogg, on or about May 18, 2004. Dr. Grogg diagnosed Webb with premenstrual dysphoric disorder ("PMDD"), a condition marked by depression symptoms, irritability, and tension before menstruation. Webb did not inform anyone at Nationwide about her medical condition until August 12, 2009.

### 4. Webb's 2004 Tardiness Issues

In the first half of 2004, Webb was tardy on January 26, February 26, March 2, April 5, May 4, June 3, June 7, and June 9. Webb did not notify Nationwide that any of these tardies were related to a serious health condition. Due to Webb's tardies, Smith placed Webb on Performance Coaching on June 9, 2004. According to Nationwide's Performance Policy, such Performance Coaching could be used to discuss attendance issues with employees, to review attendance expectations, and to provide suggestions for improvement. During the meeting, Smith reminded Webb that it was important that she work when scheduled in order to serve best the audit team

and their customers. At the time of this Coaching, Webb had not requested FMLA leave, notified Nationwide of a qualifying FMLA event, or submitted any FMLA documentation.

### 5. Webb's FMLA Certification on August 12, 2004

Webb presented an FMLA certification to Nationwide on August 12, 2004. Through this certification, Webb notified Nationwide that Dr. Terry Grogg ("Dr. Grogg"), an obstetrician/gynecologist, had diagnosed her with neurotic disorder, anxiety, and PMDD. The certification also notified Nationwide that Webb had depression symptoms, though she was not diagnosed with depression. This certification was presented 64 days after Webb's Performance Coaching. This certification did not excuse any of Webb's absences prior to August 12, 2004. It stated:

> [P]atient is experiencing complications with depression and needs to be on intermittent leave. Patient may need to be absent from work 2-3 days per month, due to a difficult family situation. Intermittent leave may be needed 8/12/04 thru 12/31/04

(Certification p. 3.)

### 6. August 16, 2004 PIP and November 22, 2004 Extension

Webb was tardy on June 17, 2004. She was also tardy on August 2, August 9, and August 10. Nationwide excused the last tardy, however, as FMLA qualifying and issued her a notice confirming this. Webb also failed to maintain her audit production at an acceptable level. As a result, Smith placed Webb on Performance Improvement ("PIP") on August 16, 2004. The PIP referenced the following tardies under "Unacceptable tardiness history": August 2, August 9, and August 10. The August 10 tardy, however, was protected under the FMLA and should not have been counted against Smith as an unacceptable tardy. Smith met with Webb to discuss the PIP document and her concerns about Webb's work production and tardiness. Webb understood that

she was being put on notice that failure to improve her attendance could result in termination. Smith's PIP was to continue through November 12, 2004.

Webb was out on documented FMLA leave between September 7, 2004 and the morning of September 8, 2004. Webb was tardy on September 9, 2004 due to problems with traffic and her garage door. Webb was tardy on September 22, 2004 because she overslept. Webb was again tardy on September 29, 2004. She had an appointment at 10:15 a.m., but she was slated to work at 7:30 a.m. and did not come in for the two hours before her appointment. She also had not notified Nationwide about the appointment until she showed up for work that afternoon.

On October 14, 2004, Smith had a PIP Status Check with Webb. Under tardiness history, the following tardies were listed: September 8, September 9, September 22, and September 29. The September 8 tardy, however, was protected under the FMLA and should not have been counted against Smith in her tardiness history.

Following the October 14, 2004 PIP Status Check, Webb continued to have tardiness problems. She was tardy on October 27, 2004 because she overslept. She was also tardy on November 15, 2004. For August 2004 and October 2004, Webb failed to maintain her production at an acceptable level, which was considered a performance issue. On November 22, 2004, Nationwide decided to extend Webb's PIP through December 31, 2004. The PIP extension stated: "Due to unacceptable job performance and tardiness, you are being placed on a one-time extension of Performance Improvement between now and December 31, 2004." Webb was notified she was not permitted to have any more tardies between November 22, 2004 and December 31, 2004. She was also warned that one more tardy over five minutes may be grounds for termination.

### 7. Webb's 2005 Tardiness Issues

On January 4, 2005, Smith was again tardy for work. She claimed she overslept because her alarm did not go off. On that date, Smith issued Webb a Performance Improvement document concerning her performance and tardiness improvement. Smith acknowledged that the PIP period ended on December 31, 2004. But Smith notified Webb that though the formal PIP period was over, it was still expected that she would continue to improve her performance and attendance. On January 6, 2005, Smith met with Webb to discuss the Performance Improvement document and to emphasize that Nationwide expected her immediately to improve her tardiness or be subject to termination.

On January 19, 2005, Webb was several hours late to work. On February 22, 2005, Webb was nearly two hours late. On March 15, 2005, Webb was one hour late. Webb informed Nationwide for her March 15th tardy that it was due to a "family emergency," but provided no other information. No one at Nationwide inquired further about details of the "family emergency." Smith reminded Webb that making up time missed due to a tardy was a privilege and that the tardy was still a performance issue. Webb's approved intermittent leave time had expired as of December 31, 2004. The March 15th tardy was not counted as FMLA leave time, though Webb contends it should have been.

On April 5, 2005 and April 11, 2005, Webb was approximately two and one-half hours late. For the April 5th tardy, she notified Nationwide it was due to "family time 2.5 hrs." No one at Nationwide inquired further about this "family time" absence. The April 5th tardy was not counted as FMLA leave time, though Webb contends it should have been. Webb was informed by email on April 18, 2005 that the January 6, 2005 Performance Improvement document would

"stay in [her] personnel file indefinitely and if the expectations of performance are not met, [her] employment with Nationwide can be terminated." On July 19, 2005, Webb was about one hour late, which she blamed on heavy traffic. Smith reminded Webb again that she could be terminated for her tardiness issues.

### 8. Webb's FMLA Certification on August 18, 2005

On August 18, 2005, Webb submitted a second FMLA certification from Dr. Grogg. The certification stated:

> [P]atient is experiencing complications [related to] premenstrual dysphoric disorder and requires intermittent leave. Patient may need to be absent from work 3-6 days per month due to PMDD, and a difficult family situation. Intermittent leave may be needed 8/8/05 thru 12/31/05.

(Second Certification p. 3.) Dr. Grogg recommended Webb see a mental health specialist to treat her possible depression, but she did not do so. Nationwide Associate Health Service Nurse Gina Lewis ("Lewis") supported Dr. Grogg's recommendation, and suggested that Webb consider seeing a specialist. Neither Lewis or anyone else at Nationwide, however, ever told Webb that they would not designate leave as FMLA leave if she did not provide a certification from a specialist. Further, Nationwide never denied Webb any FMLA leave, even though she failed to see a specialist as her physician recommended. Dr. Grogg was the only physician Webb saw in her last two years of employment with Nationwide. Nationwide approved all leave associated with Webb's treatment by Dr. Grogg, and Webb was never disciplined for any physician's appointment.

### 9. Webb's Termination

On August 23, 2005, Webb was again tardy, which she claimed was again due to traffic and because she had baked a snack for her coworkers. Webb did not tell Nationwide this absence

was for any medical reason. On August 25, 2005, Webb left work to buy stamps. Several co-workers informed Smith that Webb was seen leaving the parking lot and then returning to the building. Based on the timing of the break and the above observations, Smith concluded that Webb was gone for longer than her allowed 15 minute break and, thus, was tardy returning from her scheduled break. Webb contends she did not take longer than 15 minutes.

As a result of Webb's repeated tardiness, Nationwide terminated her on August 30, 2005 for unsatisfactory work performance. Webb was told she was being terminated for being late on August 23, 2005. Neither Nationwide nor Webb discussed her FMLA leave usage during the termination meeting. Nationwide asserts that Webb's use of FMLA leave was not in any way related to her termination. On September 13, 2005, Webb obtained a note from Dr. Grogg excusing her tardy on August 23, 2005 due to her PMDD condition. Because she had already been terminated, this note was not given to Nationwide.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving

party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P.56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

Webb alleged in her Complaint that Nationwide violated the FMLA by: (1) using FMLA protected leave time as a negative factor in disciplining and ultimately discharging her; (2) unlawfully requiring that medical certification come from a certain type of doctor of its choice; and (3) unlawfully attempting to tamper with her medical treatment for her serious health condition by suggesting that she would be denied legal protection if she did not change her treating physician and/or regimen of treatment. In her Response in Opposition, Webb does not dispute that she cannot establish that Nationwide unlawfully required that Webb's FMLA medical certification come from a specialist. Webb also does not dispute that she cannot establish that Nationwide unlawfully suggested that Webb would be denied FMLA leave if she did not obtain a medical certification from a specialist. Those claims are therefore dismissed. Webb's only remaining claim is that Nationwide violated the FMLA by using FMLA protected time as a negative factor in disciplining and ultimately discharging her.

The FMLA entitles qualifying employees to take up to 12 weeks of unpaid leave each year if, among other things, an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). This Court has adopted a single framework for all claims brought by a plaintiff who alleges that her employer used the fact that she took FMLA leave against her in some unlawful way (i.e. by discharging her, not promoting her, denying her benefits to which she otherwise would have been entitled, etc.). *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926, 940 (S.D. Ohio 2004).

In order for Webb to establish that Nationwide violated her rights under the FMLA, Webb must show the following: (1) Webb is an FMLA "eligible employee;" (2) Nationwide is an FMLA employer; (3) Webb was entitled to leave under the FMLA; (4) Webb gave Nationwide notice of her intention to take leave; and (5) Nationwide somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations. *See id., cited by Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The first two elements are not in dispute. At the time Webb began taking her intermittent FMLA leave, Plaintiff was an "eligible employee" as defined in 29 U.S.C. § 2611(2) because she worked over 1250 hours the prior 12 months before commencement of leave on April 4, 2006. Nationwide was an "employer" as defined in 29 U.S.C. § 2611(4) because it employed over fifty employees.

### A. Entitled to Take Leave

Nationwide asserts, however, that Webb cannot establish the remaining elements. First, Nationwide contends Webb cannot established that she was entitled to take leave. Webb received a medical certification that entitled her to take intermittent FMLA leave beginning on August 12,

2004 for a "serious health condition" as defined in 29 U.S.C. §2611(11) because she was

diagnosed with neurotic disorder, anxiety, and PMDD. That intermittent leave expired on

December 31, 2004. Webb again received a medical certification that entitled her to take

intermittent FMLA leave beginning on August 18, 2005. Nationwide twice approved Webb's

intermittent FMLA leave, and characterized several of her absences and tardies during the

intermittent leaves as FMLA qualifying. Therefore, Webb was entitled to take FMLA

intermittent leave during the intermittent leave periods for her serious health conditions. There is

some dispute, addressed below, however, as to whether she was entitled to FMLA leave on

March 15, 2005 and April 5, 2005.

## B. Notice of Intention to Take Leave

Second, Nationwide contends Webb cannot establish that she provided notice of her

intention to take FMLA leave. Relying on *Brohm v. JH Props., Inc.*, 149 F.3d 517 (6th Cir.

1998), Nationwide rests on the proposition that:

> [N]othing in the statute places a duty on an employer to affirmatively grant leave
> without such a request or notice by the employee. Rather, to invoke the protection
> of the FMLA, an employee must provide notice and a qualifying reason for
> requesting the leave.

*Id.* at 523. The FMLA requires the employee provide at least "notice sufficient to make the

employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and

duration of leave." 29 C.F.R. 825.302(c); *see also Walker v. Ford Motor Co.,* 424 F.3d 481, 486

(6th Cir. 2005) ("[T]he critical question is whether the information imparted to the employer is

sufficient to reasonably apprise it of the employee's request to take time off for a serious health

condition."). There are four instances that Nationwide allegedly considered as non-FMLA

excused tardies which Webb asserts were FMLA protected: August 10, 2004; September 8,

2004; March 15, 2005; and April 5, 2005. The first question this Court must explore, therefore, is whether Webb provided notice that these four tardies were FMLA protected.

On August 10, 2004, Nationwide considered this absence to be protected under the FMLA, and issued her a notice stating such. Therefore, notice was provided for that tardy. On September 8, 2004, Nationwide also considered this absence to be protected under the FMLA, and issued her a notice stating such. Therefore, notice was provided for that tardy.

On March 15, 2005, Webb was an hour late. Webb informed Smith this was due to a "family emergency," but provided no other information. On April 5, 2005, Webb was approximately two and one-half hours late. She notified Nationwide it was due to "family time 2.5 hrs" but provided no other information. Webb contends these absences should have been characterized as FMLA leave time, even though her approved intermittent FMLA leave time had expired as of December 31, 2004. Webb also contends that Nationwide should have inquired further about the details of the "family emergency" and the "family time."

Although Webb claims in her Response in Opposition that the March 15, 2005 and April 5, 2005 tardies were FMLA protected, she provides no support for these claims. First, her FMLA intermittent leave approved time had expired, so she was not, at the time of those tardies, certified by a physician for intermittent leave. Second, neither of these tardies was for a serious health condition, and as such, neither was FMLA protected.

For the March 15th tardy, she testified that she did not recall what the family emergency was. (Webb depo p. 92.) A "family emergency" is not necessarily FMLA qualifying. It may be entirely unrelated to any medical issue. Furthermore, Webb's certification had been for her own medical condition. She had not been approved for intermittent leave for a family member's

medical condition. There is, therefore, no support for characterizing that tardy as FMLA protected.

For the April 5th tardy, Webb contends this was for "family time probably for my son. He had an appointment." (Webb depo p. 93.) Although Nationwide paid Webb for the time she was tardy on this date under Nationwide's paid "family time" allowance, this tardy was not FMLA protected. Paid "family time" was a paid leave benefit independent from the FMLA. Under Nationwide's "family time" benefit, Nationwide paid employees up to three days of time off work per year to be with an ill family member, without regard to whether the family member had a serious health condition under the FMLA. Nationwide did not require its employees to submit certification for paid family time, and paid family time was often used to take a child to the doctor when the child had the common cold or flu, or stay at home with a child when the child was sick and could not go to school and did not have another caretaker at home. Such common family illnesses are not covered by the FMLA because the family member does not have a serious health condition as defined in the FMLA. *See* 29 C.F.R. 825.113(d) ("Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraines, routine dental or orthodontia problems . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.") Webb gave no indication to Nationwide that this tardy was due to a serious health condition. Furthermore, Webb's certification had been for her own medical condition. She had not been approved for intermittent leave for a family member's medical condition. There is, therefore, no support for characterizing that tardy as FMLA protected.

In summary, Webb provided sufficient notice to Nationwide that her August 10, 2004 and September 8, 2004 tardies were for FMLA qualifying reasons. Webb did not, however, provide sufficient notice to Nationwide of a "request to take time off for a serious health condition" for her March 15, 2005 and April 5, 2005 tardies. *See Cavin*, 346 F.3d at 724-25. Furthermore, Webb did not establish that there was a serious medical condition for those dates that entitled her to take FMLA leave.

### C. Employer Used Leave Against Her in an Unlawful Manner

### 1. August 10, 2004 and September 8, 2004 Tardies

The only two tardies, therefore, that were FMLA protected which Webb contends were used as negative factors in disciplining and terminating her were the August 10, 2004 and September 8, 2004 tardies. Even though both of those tardies were considered by Nationwide to be FMLA protected, they were listed in her August 12, 2004 PIP, her October 12, 2004 PIP status review, and her November 22, 2004 PIP renewal.

The August 10th tardy was listed as an unacceptable tardy when Webb was placed on PIP on August 16, 2004. In the course of that year, Webb had already accumulated nine other unexcused tardies that were not specifically listed on the PIP. The PIP documentation implies, however, that the decision to place Webb on PIP was due, in part, to improper consideration of the August 10, 2004 tardy. Placement on PIP was a form of discipline because while on PIP, employees were not eligible to apply for internal jobs, receive salary increases, or receive promotions.

When Webb's PIP status check occurred on October 12, 2004, her September 8, 2004 tardy was listed under "Tardiness History." There were three other tardies also listed under

"Tardiness History." Webb's PIP was in force through November 12, 2004. Therefore, this tardy did not have the effect of forcing her to remain on PIP as Webb would have remained on PIP regardless of what was reported in the status check. Therefore, though this absence was improperly considered in her status check, it did not have any practical effect of damaging her.

On November 22, 2004, Webb was evaluated to determine whether her PIP would be terminated. It was found that based on six tardies that had occurred while she was on PIP, one of them being the September 8, 2004 tardy, Webb had not satisfied the goals of her PIP. Therefore, due in part to improper consideration of the September 8, 2004 tardy, she was forced to remain on PIP through December 31, 2004, which is a form of discipline.

There are two questions presented by these facts. First, does Webb have an FMLA claim for being placed on PIP in August of 2004 and for being placed on a PIP continuation in November of 2004? Second, does Webb have an FMLA claim for termination of her employment in August of 2005?

## 2. Statute of Limitations on PIP Claim

Nationwide asserts that Webb's claims are barred, in part, on the applicable statute of limitations. Webb filed her FMLA lawsuit on August 27, 2007. To the extent that Webb is attempting to argue that the placement on PIP in August of 2004 and the extension of PIP in November of 2004 is a separate cause of action from her termination, Nationwide contends such a claim is barred by the FMLA's two-year statute of limitations.

For private FMLA claims, there is a two-year statute of limitations from the date of the last event constituting the alleged violation, unless the violation is "willful," in which case the statue of limitations is extended to three years. 29 U.S.C. § 2617(c). The Sixth Circuit has

defined willfulness under the FMLA as "[a]n employer . . . act[ing] with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). This standard requires "more than a showing of negligence on the employer's part." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). It is the employee's burden to prove that the violation was willful. *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004).

Nationwide contends that Webb's failure specifically to allege that Nationwide acted willfully, with knowledge its conduct was prohibited, or with reckless disregard prevents her claim from qualifying for the three-year statute of limitations. Nationwide, however, informed Webb that it considered the August 10, 2004 and September 8, 2004 tardies to be FMLA protected. After informing Webb that those tardies were protected, it subsequently listed those tardies on her PIP documentation. This shows, at the very least, that Nationwide was negligent in considering those tardies in issuing the PIP. These facts may establish, however, that Nationwide acted with "conscious indifference" to Webb's FMLA rights. *See* Black's Law Dictionary Online "reckless disregard" (8th ed. 2004). It is therefore proper for a jury to decide whether Nationwide's use of the FMLA protected absences in issuing the PIP was done with reckless disregard of Webb's FMLA rights. *See also Hill v. McIntyre*, 884 F.2d 271, 276 (6th Cir. 1989) (finding that if a genuine question of fact exists as to whether a defendant acted in reckless disregard, it is proper for a jury to decide). For purposes of summary judgment, therefore, Webb's PIP claim is not barred by the statute of limitations.

### 3. Damages on PIP Claim

Nationwide contends that even if a claim based on the PIP is not time-barred, the claim is still not actionable because Webb has not shown she suffered any damage from the PIP. Using the taking of FMLA leave as a negative factor in disciplining an employee is prohibited by the FMLA. 29 C.F.R. § 825.220(c). The FMLA, however, is not a strict liability statute. *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006). In order to establish an FMLA violation based on the August 12, 2004 PIP or November 22, 2004 PIP extension, Webb must establish that some harm resulted from including the FMLA violations on the PIP. *See id.*

This Court already determined that Webb has set forth sufficient evidence to show that the decision to place her on PIP was due, in part, to improper consideration of the August 10, 2004 tardy. She has also shown that the decision to extend her PIP was due, in part, to improper consideration of the September 8, 2004 tardy. Nationwide contends, however, that Webb did not suffer any "damage" from being place on PIP, and therefore, the FMLA violation did not result in any harm.

Under the FMLA, an employer is only liable for damages when the employee can establish damages equal to "any wages, salary, employment benefits or other compensation denied or lost to such employee by reason of the violation" or "any actual monetary losses sustained by the employee as a direct result of the violation," along with equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a). On its own, a PIP does not constitute an adverse employment action, unless it results in actionable damage, such as the denial of a promotion. *See Bacon v. Honda of Am. Mfg.*, 192 F. App'x 337, 343 (6th Cir. 2006).

Nationwide considered PIP to be a form of discipline. While on PIP, an employee was not eligible for promotions, transfers, or salary increases. Nationwide contends, however, that Webb never asserted that she wanted to apply for a promotion, transfer, or salary increase during the PIP period, or that she had been denied a promotion, transfer, or salary increase. Reviewing Webb's Complaint, Response to Motion, and the evidence she has presented, this Court finds that Webb has not contended she was damaged by being on PIP itself. In other words, she has not contended that not being eligible for promotions, transfers, or salary increases during the PIP period injured her. Rather, she only has contended that being on PIP damaged her because it led to her termination.

### 4. Termination

Webb's claim for termination of her employment will only survive summary judgment if she can show by a preponderance of the evidence that Nationwide used her FMLA leave as a negative factor in her termination. The only two FMLA protected absences that she asserts Nationwide used against her in her termination were the August 10, 2004 and September 8, 2004 tardies. If her termination was based in part on either of those tardies, even if it was in combination with other non-FMLA protected absences, this may still violate the FMLA. *See Wysong*, 503 F.3d at 448; *Cavin*, 346 F.3d at 726.

Webb compares her case to the Sixth Circuit *Wysong* case. The *Wysong* Court found that an initial FMLA violation "set in motion an unbroken chain of events culminating in Wysong's termination," and concluded that Wysong met the fifth element of her interference claim as a result. 503 F.3d at 448. Webb contends that in the case sub judice, the August 2004 PIP and the PIP extension in November 2004 set in motion an unbroken chain of events culminating in her

termination. Webb asserts that Nationwide's decision to terminate Webb was based on excessive tardiness, rather than a single instance, and some of those tardies, specifically those of August 10, 2004 and September 8, 2004, were FMLA protected.

Nationwide claims, however, that Webb's termination was not due to the August 2004 PIP or November 2004 PIP extension, and was not based at all on her FMLA protected tardies. Nationwide contends that this case is not like *Wysong* because Webb was terminated for non-FMLA tardies that were unrelated to the FMLA protected tardies. Nationwide asserts that this Court should compare this case to *Bradley,* 322 F.Supp.2d 926, a case previously before this Court which was favorably cited by the Sixth Circuit in *Wysong*, 503 F.3d at 447. In *Bradley*, an employee was terminated, according to the employer's decision-maker, based on her "record, the overall absenteeism, the overall substandard performance and the fact that she had two days of no-call, no-show when she was scheduled to return to work." 322 F.Supp.2d at 946 n.21. The decision-maker testified that he considered the employee's "whole personnel file" when deciding on her termination, including her "excessive absenteeism." *Id*. at 946. Her termination letter also stated her termination was due, in part, to her "continued absenteeism." *Id.* Because the decision-maker testified that he considered her whole personnel file, which included FMLA protected absences that should not have been considered, and testified her absence was due to continued absenteeism, this Court found there was a genuine issue of material fact as to whether the employee's FMLA absences played a part in the decision to terminate her. *Id*. This Court then proposed a hypothetical situation that could have warranted summary judgment:

> If by "continued absenteeism," [the decision-maker] was referring only to the many absences [the employee] had before she became eligible for FMLA leave and/or any of [the employee's] other absences that she did not claim as being for the purpose of caring for [her husband], then Defendant could be found not to

have violated the FMLA for terminating [the employee], since it is undisputed that [the employee's] no-call, no-show absences in September of 2001 were a sufficient basis for terminating her under Defendant's policies.

*Bradley*, 322 F.Supp.2d at 947.

The FMLA does not protect an employee from being terminated for reasons not related to her FMLA leave. *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). An employee may lawfully be dismissed after exercising her right to FMLA leave if the "dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.*; *see Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) ("[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.").

It appears FMLA leave was improperly considered in issuing the PIP in August of 2004 and in extending the PIP in November of 2004. Unlike in *Wysong*, however, this did not set in motion an unbroken chain of events that culminated in termination. Webb was not terminated after she failed to meet the goals of her August 2004 PIP or November 2004 PIP extension. The PIP extension expired on December 31, 2004, yet Webb was not terminated until August 30, 2005. There has been no evidence presented that the reason she was terminated was due to her failure to meet the goals of her August 2004 PIP or November 2004 PIP extension.

On January 6, 2005, Smith notified Webb that though the formal PIP period was over, it was still expected that she would continue to improve her performance and attendance. Smith therefore issued Webb a Performance Improvement memo, and met with Webb to emphasize that

Nationwide expected her immediately to improve her tardiness or be subject to termination. On July 19, 2005, after being tardy, Webb was again reminded that she could be terminated for her tardiness issues. Between the January 2005 meeting and her August 30, 2005 termination, Smith had eight tardies that were not FMLA protected.

The final two incidents of her tardiness were on August 23, 2005, due to emergency equipment in the road,[1] and August 25, 2005, due to taking longer than the 15 minutes allotted for her midday break to go to the post office. Webb contends she was not in fact tardy returning from her post office trip. But even if Smith was incorrect in believing that Webb was tardy on August 25, 2005, which she based on the timing of her break and reported observation from coworkers, the trip was clearly not FMLA-related and Webb has presented no evidence that Smith knew that Webb in fact was not tardy and terminated her for having taken FMLA leave.

Webb admits that she was told only that she was terminated for being late on August 23, 2005. Smith, Nationwide's decision-maker for Webb's termination, testified that she never considered any of Webb's FMLA qualifying leave in the decision to terminate Webb. Smith also testified that she never considered Webb's August 10, 2004 tardy or September 8, 2004 tardy in

---

[1]Webb contends that the August 23, 2005 tardy was related to her serious health condition. It is undisputed, however, that she never notified Nationwide that she was late that day due to any fact other than equipment in the road and making a snack for her coworkers. She later obtained a physician's note on September 13, 2005, thirteen days after she had been terminated, but this was not presented to Nationwide. To satisfy the notice requirement under the FMLA, a plaintiff must present evidence that she was still employed at the time she requested leave. *See id.* In *Green v. Burton Rubber Processing, Inc.*, the employee claimed that he intended to request four days of leave, but he was terminated before he was able to request the leave. 30 F. App'x 466, 468-69 (6th Cir. 2002). The *Green* court held that once the employee was discharged, "he was no longer an employee, and he was thus not entitled to leave under the FMLA." *Id.* at 471. Therefore, Nationwide's consideration of this tardy as a reason for her termination did not violate the FMLA.

the decision to terminate her a year later on August 25, 2005. Rather, Smith testified, Webb was terminated for unsatisfactory work performance based on her repeated non-FMLA related tardies. Webb merely speculates that the inclusion of these two dates on the PIP documentation demonstrates that Nationwide considered the two tardies one year later as part of the decision-making process for her termination. "[I]n order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

Smith's argument is that the PIP documentation establishes that Nationwide considered her FMLA protected tardies in its decision to terminate her even though no other evidence supports this. To adopt this argument would mean that Nationwide could not have terminated Webb for her non-FMLA protected absences, no matter how egregious, because Nationwide had once disciplined her for FMLA protected absences. Improper consideration of FMLA protected tardies in the issuance of a PIP one year prior to termination does not lead to the conclusion that those tardies were improperly considered in the termination decision, without some evidence that those FMLA protected absences were considered.

Comparing this case to the *Bradley* case, unlike in *Bradley*, there is no evidence that Smith considered all of Webb's absenteeism, which could include FMLA protected absences, nor is there evidence that Smith considered Webb's entire personnel file, which would include the August 2004 PIP or November 2004 PIP extension. Instead, this case is like the hypothetical proposed in *Bradley*, in that the only evidence presented is that non-FMLA protected tardies

were all that was considered in the decision to terminate, and these tardies alone were a

sufficient basis for terminating Webb.[2]

Webb was repeatedly warned that unexcused tardies may result in the termination of her

employment. Webb had the following non-FMLA protected tardies in 2004: January 26,

February 26, March 2, April 5, May 4, June 3, June 7, June 9, June 17, August 2, September 9,

September 22, September 29, October 27, and November 15. After her PIP concluded, Webb had

the following non-FMLA protected tardies in 2005: January 4, January 19, February 22, March

15, April 5, April 11, July 19, August 23, and August 25. Smith testified that she considered only

Webb's non-FMLA protected tardies in the decision to terminate her on August 30, 2005, and

that she did not consider her August 10, 2004 tardy or September 8, 2004 tardy. These non-

FMLA protected tardies were a sufficient reason for termination, and Webb has presented no

evidence to support that the August 10, 2004 tardy or September 8, 2004 tardy were considered

for her termination. Webb has failed, therefore, to establish a genuine issue of material fact as to

whether her FMLA protected tardies were considered in the decision to terminate her.

---

[2]Webb does not dispute that Nationwide had discretion to terminate her for excessive tardiness, nor does she dispute that her non-FMLA protected tardies were a sufficient basis for terminating her. Webb also does not contend that she would not have been terminated but for the two FMLA protected tardies.

## V. CONCLUSION

For the foregoing reasons, Nationwide's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                **s/Algenon L. Marbley**
                              **ALGENON L. MARBLEY**
                              **UNITED STATES DISTRICT COURT**

**Dated: September 14, 2009**